IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEPCO ENERGY SERVICES, INC., | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| WESTFIELD INSURANCE | ) | |
| COMPANY, | ) | |
| Defendant | ) | ELECTRONICALLY FILED |

## COMPLAINT

Plaintiff PEPCO ENERGY SERVICES, INC., by its attorneys, MacDonald, Illig, Jones & Britton LLP, files this Complaint and states the following in support of its claims:

### The Parties

1.    Plaintiff Pepco Energy Services, Inc. ("PES") is a Delaware corporation with its principal place of business at 1300 North 17th Street, Suite 1500, Arlington, Virginia 22209.

2.    Plaintiff PES is in the business of providing renewable energy, energy efficient products, and energy efficient services to a wide range of energy users

including commercial, institutional, industrial, and governmental customers and clients throughout the United States.

3.      Defendant Westfield Insurance Company ("Westfield") is an Ohio corporation with its principal place of business at One Park Circle, Westfield Center, Ohio 44251.

4.      Defendant Westfield is in the business of providing insurance and banking services in Pennsylvania and other states including acting as a surety on performance bonds for the construction industry.

<u>Subject Matter Jurisdiction</u>

5.      The United States District Court for the Middle District of Pennsylvania has subject matter jurisdiction over this civil action, pursuant to 28 U.S.C. § 1332(a)(1), diversity of citizenship, because:

(a)     plaintiff PES is a citizen of the States of Delaware and Virginia;

(b)     defendant Westfield is a citizen of the State of Ohio; and

(c)     the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

<u>Venue</u>

6.      Venue is proper in the United States District Court for the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b), because:

(a)   defendant Westfield resides in the Middle District of Pennsylvania within the meaning of 28 U.S.C. § 1391(c)(2);

(b)   a substantial part of the events giving rise to the claims by plaintiff PES in this civil action occurred in the Middle District of Pennsylvania; and/or

(c)   the construction project that is the subject of the Subcontractor Performance Bond that provides the basis for this civil action is located in the Middle District of Pennsylvania.

Facts

7.    Franklin County Housing Authority ("FCHA") is a public housing authority, organized and existing under Pennsylvania law with its principal offices at 436 West Washington Street, Chambersburg, Pennsylvania 17201, that provides affordable public housing to families and to elderly and disabled persons in Franklin County, Pennsylvania.

8.    Johnson & Wood, LLC ("J&W") is a Michigan limited liability company with its principal place of business at 2130 E. Hemphill Road, Burton, Michigan 48529 that provides engineering and mechanical contractor services for industrial, institutional, and commercial projects.

9.    Plaintiff PES and FCHA are parties to an Energy Services Agreement dated September 20, 2010, by which PES agreed to install certain energy savings equipment and provide related services intended to reduce energy costs at certain

FCHA buildings and property in Chambersburg, Franklin County, Pennsylvania and Waynesboro, Franklin County, Pennsylvania (the "FCHA Energy Savings Project").

10.     Plaintiff PES and J&W are parties to a Subcontractor Construction Agreement dated October 11, 2010 ("Subcontractor Construction Agreement") by which J&W agreed to design and provide a turnkey installation of complete and properly functioning HVAC systems, including limiting thermostats, in certain FCHA housing units as part of the FCHA Energy Savings Project for a total contract amount of $1,961,981.00.

11.     Pursuant to the Subcontractor Construction Agreement, J&W was required to provide a performance bond for its work as part of the FCHA Energy Savings Project in the amount of 100% of the contract price -- $1,961,981.00 -- for the benefit of plaintiff PES.

12.     On or about October 19, 2010, defendant Westfield issued its Subcontract Performance Bond No. 5958748 ("Westfield Performance Bond") in the amount of $1,961,981.00, naming J&W as Principal, Westfield as Surety, and plaintiff PES as Obligee, which performance bond was delivered by J&W to PES. A copy of the Westfield Performance Bond is attached hereto as Exhibit A.

13.     The Westfield Performance Bond makes express reference to the Subcontractor Construction Agreement between plaintiff PES and J&W and incorporates that agreement into the performance bond.

14.     During the course of the FCHA Energy Savings Project, J&W breached the Subcontractor Construction Agreement in several ways including, but not limited to:

    (a)     failing to properly design and/or install HVAC systems in certain FCHA housing units, thereby causing increased humidity and mold conditions in those housing units;

    (b)     failing to properly design and/or install HVAC systems in certain FCHA housing units, thereby causing inadequate heat conditions in those housing units; and

    (c)     otherwise failing to comply with its representations and warranties to PES in the Subcontractor Construction Agreement including, but not limited to, failing to perform work for the FCHA Energy Savings Project that was free of defects, errors or omissions; failing to perform work for the FCHA Energy Savings Project in a skillful, timely and professional manner; and failing to perform work for the FCHA Energy Savings Project that conformed in all respects to the requirements of that agreement.

15.     Pursuant to the Subcontractor Construction Agreement, J&W designed and installed HVAC systems in certain FCHA housing units that included multi-circuit mini split heat pumps and related equipment, including limiting thermostats, that were sold by Fujitsu General America, Inc. (the "Fujitsu equipment").

16.    During the course of the FCHA Project, FCHA and its tenants complained to plaintiff PES and defendant J&W about high humidity/mold conditions and about inadequate heat conditions in certain FCHA housing units in which J&W had installed the Fujitsu equipment.

17.    These high humidity/mold conditions and inadequate heat conditions were caused by J&W's inadequate design and installation of the HVAC systems as part of the FCHA Energy Savings Project.

18.    Defendant Westfield has been aware of deficiencies in J&W's performance of the Subcontractor Construction Agreement since during or about October of 2011.

19.    On or about October 27, 2011, plaintiff PES provided a response to a Contract Status Inquiry from defendant Westfield, informing Westfield about certain deficiencies in J&W's performance of the Subcontractor Construction Agreement including, but not limited to, the design and installation of the HVAC systems and the high humidity/mold conditions.

20.    On or about February 2, 2012, plaintiff PES sent a letter to J&W, identifying numerous deficiencies in J&W's performance of the Subcontractor Construction Agreement including, but not limited to, the design and installation of the HVAC systems, the high humidity/mold conditions and the inadequate heat

conditions; and PES also provided defendant Westfield with a copy of the February 2, 2012 letter.

21.    On or about March 5, 2012, plaintiff PES again informed defendant Westfield of the deficiencies in J&W's performance of the Subcontractor Construction Agreement and provided Westfield with a second set of copies of the PES Contract Status Inquiry response dated October 27, 2011, and the PES letter to J&W dated February 2, 2012.

22.    On or about May 3, 2012, plaintiff PES sent a letter to J&W and defendant Westfield, pursuant to Paragraph 1.1.1 of the Westfield Performance Bond, requesting a performance bond conference with J&W and Westfield to discuss the ongoing deficiencies in J&W's performance of the Subcontractor Construction Agreement and the completion of J&W obligations under that agreement.

23.    On or about May 24, 2012, plaintiff PES, defendant Westfield, and J&W participated in the performance bond conference requested by PES, but J&W continued to deny any responsibility for the high humidity/mold conditions and the inadequate heat conditions at the FCHA Energy Savings Project, and no agreement was reached to resolve those issues or to complete the Subcontractor Construction Agreement.

24.     On or about June 26, 2012, as a result of J&W's continuing breaches of the Subcontractor Construction Agreement, plaintiff PES provided five days written notice to J&W, pursuant to Section 12.1 of that agreement, that PES may terminate the Subcontractor Construction Agreement; and PES also provided defendant Westfield with a copy of that letter.

25.     On or about August 13, 2012, as a result of J&W's continuing breaches of the Subcontractor Construction Agreement, plaintiff PES terminated the Subcontractor Construction Agreement, pursuant to Section 12.1 of that agreement, thereby satisfying Paragraph 1.1.2 of the Westfield Performance Bond; and PES also provided Westfield with a copy of that letter.

26.     On or about January 8, 2013, plaintiff PES sent a letter to defendant Westfield agreeing to pay "the balance of the subcontract price" to Westfield or to a contactor selected by Westfield to perform the Subcontractor Construction Agreement, in accordance with the terms of that agreement, thereby satisfying Paragraph 1.1.3 of the Westfield Performance Bond,

27.     By its January 8, 2013 letter to defendant Westfield and the accompanying Appendix of documents, plaintiff PES provided Westfield with additional information and documents regarding issues related to the completion of the Subcontractor Construction Agreement including:

(a)   the unresolved high humidity/mold and inadequate heat issues at the FCHA Energy Savings Project;

(b)   the results of a detailed inspection of FCHA housing units that showed widespread problems with J&W's installation of Fujitsu equipment as part of the FCHA Energy Savings Project;

(c)   a revised PES Work Plan dated November 9, 2012 ("PES Revised Work Plan") that had been approved by FCHA to address the high humidity/mold, inadequate heat, and improper installation issues at the FCHA Project and that included the removal of the Fujitsu equipment installed by J&W, the use of hydronic heat as the sole source of heating, and the installation of GE through-the-wall air conditioning units for cooling in certain FCHA housing units; and

(d)   pricing information for implementation of the PES Revised Work Plan based on competitive proposals from contractors and equipment suppliers.

28.    By its January 8, 2013 letter to defendant Westfield, plaintiff PES also requested Westfield, as Surety, to promptly, and at Westfield's expense, take action under Paragraph 2 of the Westfield Performance Bond to complete the obligations of J&W under the Subcontractor Construction Agreement.

29.    On or about February 4, 2013, after plaintiff PES did not receive any response from defendant Westfield to its January 8, 2013 letter, PES sent a letter to Westfield, pursuant to Paragraph 3 of the Westfield Performance Bond, providing additional written notice that unless Westfield performed its obligations, as Surety, under the performance bond within 15 days of receipt of the February 4, 2013 letter, Westfield would be deemed in default.

30.     On or about February 25, 2013, after defendant Westfield still failed to take any of the actions set forth in Paragraph 2 of the Westfield Performance Bond, plaintiff PES informed Westfield, pursuant to Paragraph 3 of the performance bond, that Westfield was deemed in default, that PES would initiate work under the PES Revised Work Plan, and that PES intended to enforce any or all of its remedies against Westfield under the performance bond.

31.     After February 25, 2013, plaintiff PES began to perform the work under the PES Revised Work Plan that was identified in its January 8, 2013 letter to defendant Westfield, and that work is ongoing and expected to be completed by on or about October 31, 2013.

32.     FCHA has not accepted all of the work covered by the Subcontractor Construction Agreement, has not issued a Certificate of Full Compliance with respect to that work, and has not yet paid PES the full contract amount for the FCHA Energy Savings Project under the Energy Services Agreement.

33.     Plaintiff PES has satisfied all conditions precedent to require defendant Westfield to perform its obligations, as Surety, under the Westfield Performance Bond.

34.    The failure of defendant Westfield to perform its obligations, as Surety, under the Westfield Performance Bond constitutes a material breach by Westfield of the performance bond.

35.    As a result of defendant Westfield's material breach of the Westfield Performance Bond, plaintiff PES has suffered damages in the amount of at least $1,643,116.37 consisting of the following:

| | | | |
|---|---|---|---|
| (a) | mechanical equipment removal/installation (Noyes Air Conditioning Contractors, Inc.) | $1,278,000.00 | |
| (b) | purchase of GE air conditioning mechanical equipment (CED) | $365,116.37 | |
| (c) | construction management expenses (PES) | $75,000.00 (estimated) | |

WHEREFORE, plaintiff Pepco Energy Services, Inc. respectfully requests that judgment be entered in its favor and against defendant Westfield Insurance Company in the amount of $1,643,116.37, plus construction management expenses incurred by Pepco Energy Services, Inc. in an amount to be quantified upon completion of the PES Revised Work Plan, plus prejudgment interest and attorneys' fees, expenses, and costs to the fullest extent permitted by law and rules of court, together with such other relief as this Honorable Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff Pepco Energy Services, Inc. hereby demands a jury trial with respect to all claims set forth in the Complaint.

Respectfully submitted,

_____
s/ Roger H. Taft

Roger H. Taft
PA 19983
MacDONALD, ILLIG, JONES
   & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7603
(814) 454-4647 (facsimile)
rtaft@mijb.com

Attorneys for Plaintiff Pepco Energy Services,
Inc.

Subcontract

Performance

Bond

Bond No. 5958748

# Westfield Insurance Co.

Westfield Group <sup>SM</sup> One Park Circle, P O Box 5001
Westfield Center, Ohio  44251-5001

KNOW ALL MEN BY THESE PRESENTS:     That  Johnson & Wood, LLC, 2130 Hemphill Road, Burton, MI 48529

(Here insert the name and address, or legal title, of the Subcontractor)

as Principal, and WESTFIELD INSURANCE COMPANY, Westfield Center, Ohio as Surety, are held and firmly
bound unto  Pepco Energy Services, 1300 North 17th Street, Suite 1600, Arlington, VA 22209

(Here insert the name and address, or legal title, of the General Contractor)

as Obligee, in the amount of  One Million Nine Hundred Sixty-One Thousand Nine Hundred Eighty-One and No/100
Dollars ($ 1,961,981.00                                                                                                                                           ),
for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and
assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated October 11, 2010
entered into a subcontract with Obligee for  Franklin County Housing Authority Mechanical Energy Conservation

in accordance with drawings and specifications prepared by

(Here insert full name and title)
which subcontract is by reference made a part hereof, and is hereinafter referred to as the subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if the Principal shall promptly and
faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and
effect.

1.     If there is no Obligee default, the Surety's obligation under this Bond shall arise after:
   1.1   The Obligee has notified the Principal and the Surety at its address above described that the Obligee is considering declaring
         a default of the Principal and has requested and attempted to arrange a conference with the Principal and the Surety to be
         held not later than fifteen days after receipt of such notice to discuss methods of performing the subcontract. If the Obligee,
         the Principal and the Surety agree, the Principal shall be allowed a reasonable time to perform the subcontract, but such
         agreement shall not waive the Obligee's right, if any, subsequently to declare a default of the Principal; and
   1.2   The Obligee has declared a default of the Principal and formally terminated the Principal's right to complete the subcontract.
         Such default of the Principal shall not be declared earlier than twenty days after the Principal and the Surety have received
         notice as provided in the preceding paragraph; and
   1.3   The Obligee has agreed to pay the balance of the subcontract price to the Surety or to the contractor selected to perform the
         subcontract, in accordance with the terms of the subcontract with the Obligee. "Balance of the subcontract price" shall mean
         the total amount payable to the Obligee to the Principal under the subcontract after all proper adjustments have been made,
         reduced by all valid and proper payments made to or on behalf of the Principal under the subcontract.

2.     When the Obligee has satisfied the conditions of Paragraph 1, the Surety shall promptly and at the Surety's expense take one of
       the following actions:
   2.1   Arrange for the Principal, with the consent of the Obligee, to perform and complete the subcontract; or
   2.2   Undertake to perform and complete the subcontract itself, through its agents or through independent contractors; or
   2.3   Obtain bids or negotiated proposals from qualified contractors acceptable to the Obligee for a contract for performance and
         completion of the subcontract, arrange for a contract to be prepared for execution by the Obligee and the contractor selected
         with the Obligee's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent
         to the bonds issued on the subcontract, and pay to the Obligee the amount of damages in excess of the balance of the
         subcontract price incurred by the Obligee resulting from the Principal's default; or
   2.4   Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness
         under the circumstances:
      .1   After investigation, determine the amount for which it may be liable to the Obligee and, as soon as practicable after the
            amount is determined, tender payment therefor to the Obligee; or
      .2   Deny liability in whole or in part and notify the Obligee citing reasons therefor.

BD 5050  (10-88)                        Page 1 of 2

3.  If the Surety does not proceed as provided in Paragraph 2 with reasonable promptness, the Surety shall be deemed to be in default on this bond fifteen days after receipt of an additional written notice from the Obligee to the Surety demanding that the Surety perform its obligations under this bond, and the Obligee shall be entitled to enforce any remedy available to the Obligee.

4.  Any proceeding, legal or equitable, under this bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after default of the Principal or within two years after the Principal ceased working or within two years after the Surety refuses or fails to perform its obligations under this bond, which ever occurs first.  If the provisions of this paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.  No right of action shall accrue on this bond to any person or entity other than the Obligee or its heirs, executors, administrators, or successors.

Signed this  19th            day of  October               ,  2010            .

IN THE PRESENCE OF:

Johnson & Wood, LLC
Principal

By:  _____
        Steven P. Torrey, President

**SUBCONTRACT PERFORMANCE BOND**
RECOMMENDED FOR USE WHERE THE GENERAL CONTRAC-
TOR HAS FILED PERFORMANCE BOND APPROVED BY THE
AMERICAN INSTITUTE OF ARCHITECTS.

WESTFIELD INSURANCE COMPANY (Seal)
Surety

By:  _____
        Janice L. Stickles                        Attorney-in-Fact

**BD 5050** (10-88)                    Page 2 of 2